UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No. _____
)
) NOTICE OF **_PRELIMINARY_**
) HEARING ON MOTION
)     FOR USE OF CASH COLLATERAL
)     TO OBTAIN CREDIT
Debtor(s) ) *(Check One)*

YOU ARE NOTIFIED THAT:

1.    The undersigned moving party, _____, filed a Motion    For Use of Cash Collateral    To Obtain Credit *(check one)*. A copy of the motion is attached; and it includes BOTH (i) the statement required by Local Form #541.7, and (ii) the following allegations:

   a.  The immediate and irreparable harm that will come to the estate pending a final hearing is _____.

   b.  The amount of    cash collateral    credit *(check one)* necessary to avoid the harm detailed above prior to the final hearing is _____.

2.    The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3.    A **_PRELIMINARY_** HEARING on the motion WILL BE HELD ON _____ AT _____ IN _____.
Testimony will be received if offered and admissible.

4.    If you WISH TO OBJECT to the motion, YOU MUST DO ONE OR BOTH OF THE FOLLOWING: (1) ATTEND the preliminary hearing; AND/OR (2) FILE with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; OR if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401), BOTH:  (a) a written response, which states the facts upon which you will rely, AND (b) a certificate showing a COPY of the response was given DIRECTLY TO the Judge, and served on the U.S. Trustee and the party named in pt. 2 above. See Local Form #541.51 for details.

5.    On _____ copies of BOTH this notice AND the motion were served pursuant to FRBP 7004 on the debtor(s); any debtor's attorney; any trustee; any trustee's attorney; members of any committee elected pursuant to 11 U.S.C. §705; any Creditors' Committee Chairperson [or, if none serving, on all creditors listed on the list filed pursuant to FRBP 1007(d)]; any Creditors' Committee attorney; the U.S. Trustee; and all affected lien holders whose names and addresses used for service are as follows:

_____
Signature

_____
(If debtor is movant) Debtor's Address & Taxpayer ID#(s) (last 4 digits)

541.1 (2/13/09)    **\*\*LOCAL FORM #541.51 ATTACHED IF this NOTICE served on PAPER\*\***

1  Howard M. Levine, OSB No. 800730
   Timothy A. Solomon, OSB No. 072573
2  1000 SW Broadway, Suite 1400
   Portland, OR  97205-3089
3  Telephone: 503-227-1111
   Facsimile: 503-248-0130
4  Email: hlevine@sussmanshank.com

5  Attorneys for Debtor and Debtor-in-Possession

6

7

8              IN THE UNITED STATES BANKRUPTCY COURT

9                         DISTRICT OF OREGON

10 In re                          )   Case No. 11-37108-rld11
                                  )
11 ERP-Link Corp.,                )   MOTION FOR ENTRY OF INTERIM
                                  )   AND FINAL ORDERS AUTHORIZING
12              Debtor.           )   USE OF CASH COLLATERAL
                                  )
13                                )
                                  )
14                                )
                                  )
15 _____)

16        Pursuant to Section 363(c) of Title 11 of the United States Code (the "Bankruptcy

   Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy
17
   Rules"), and LBR 4001-2, the above-captioned Debtor and Debtor-in-Possession
18
   ("Debtor") moves this Court for (a) entry of the Interim Order Authorizing Use of Cash
19
   Collateral and Granting Adequate Protection attached hereto as Exhibit 1 (the "Interim
20
   Order"); and, (b) after final hearing held pursuant to Bankruptcy Rule 4001(b)(2), entry
21
   of a final order authorizing Debtor to use cash collateral during the pendency of its case.
22
   In support of its Motion, Debtor states as follows:
23
          1.    The Interim Order does not contain any of the provisions listed in the
24
   Court's Guidelines Regarding Motions to Use Cash Collateral or to Obtain Credit (Local
25
   Form 541.7).
26

   Page 1 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
   AUTHORIZING USE OF CASH COLLATERAL

**BACKGROUND**

2.    On August 17, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.    Debtor is an independent software vendor that develops its own software which it sells to businesses.  The software allows large corporate computer systems to integrate and "talk to" other systems which otherwise have incompatible software.

4.    Debtor has continued in possession of its property and is continuing to operate and manage its business as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this case.

5.    The Court has jurisdiction over this matter pursuant to 28 USC §§ 157 and 1334.  Venue is proper in this district pursuant to 28 USC §§ 1408 and 1409.  This is a core proceeding pursuant to 28 USC § 157(b)(2)(M).

6.    Debtor and Walter Weyler Jr. (the "Lender") are parties to a document entitled "Secured Promissory Note" dated September 8, 2008 as to which Lender filed a UCC-1 financing statement on September 9, 2010 (collectively, the "Loan Documents").  Pursuant to the Loan Documents, Lender asserts he holds a security interest in all of the assets described in the Loan Documents.  Anderson Declaration, ¶ 13.  Copies of the Loan Documents are attached hereto as Exhibit 2.

7.    Debtor believes Lender asserts the balance due to him from Debtor is no less than $208,090.  The Debtor further believes Lender contends this amount is fully secured by the terms and provisions of the Loan Documents.  Debtor disputes Lender's contention.  Debtor contends, among other things, that the balance due is less than Lender asserts, and that not all of the Debtor's obligations to Lender are secured by the collateral described in the Loan Documents.  *Id.* ¶ 14.

Page 2 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL

1    8.    In order to operate its business until its assets are sold, Debtor will need to

2    use cash collateral in which Lender contends it has an interest. *Id.* ¶ 15.

3    9.    The term "Lender's Cash Collateral" means cash collateral as defined in

4    Section 363(a) of the Bankruptcy Code and includes, without limitation, all checks,

5    receipts, payments, proceeds, products, offspring, rents, or profits arising from the

6    prepetition or postpetition use, lease, sale, or disposition of the Debtor's assets.

7                                **RELIEF REQUESTED**

8    10.    Debtor seeks to use the Lender's Cash Collateral pursuant to

9    Sections 105(a) and 363(c)(1) and (2) of the Bankruptcy Code, the Budget attached to

10    the Interim Order, and the terms and conditions of the Interim Order, to pay his

11    continuing operating expenses, including his Chapter 11 administrative expenses.

12    11.    The Debtor's authority to use Cash Collateral is limited to the amounts set

13    forth in the Budget; provided, however, that the Debtor may make expenditures in

14    excess of said sums in the Budget so long as any variance shall not exceed 10% of the

15    cumulative expenses as set forth in the Budget, tested on a bi-weekly and monthly

16    basis.  The Debtor may exceed such variances only with the prior written consent of the

17    Bank or by subsequently entered order of this Court.  It is understood that the Bank may

18    assume that the Debtor will comply with this requirement and the Bank shall have no

19    duty to monitor such compliance.

20    12.    Debtor has received an offer from Gimmal Holdings LLC ("Gimmal") to

21    purchase substantially all of its assets, as more fully described in the Asset Purchase

22    Agreement dated August 16, 2011, and the proposed Notice of Intent to Sell Real or

23    Personal Property, Compensate Real Estate Broker, and/or Pay any Secured Creditor's

24    Fees and Costs; Motion for Authority to Sell Property Free and Clear of Liens attached

25    as Exhibit C to Debtor's Motion For Order: (A) Establishing Notice And Bidding

26    Procedures In Connection With A Contemplated Sale Of Assets To Gimmal Holdings

Page 3 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL

1    LLC; And (B) Scheduling An Auction filed contemporaneously herewith.

2         13.    One of the requirements of the Asset Purchase Agreement is that the

3    Debtor continue to operate its business in the ordinary course. In order for the Debtor to

4    operate its business, it must use Lender's Cash Collateral.  *See* Anderson Declaration,

5    ¶ 15.

6                           **BASIS FOR RELIEF REQUESTED**

7         14.    Debtor requires the use of the Lender's Cash Collateral to preserve the

8    value of Debtor's business as a going concern and to preserve and maintain the assets

9    of the bankruptcy estate.  Without use of such cash collateral, Debtor will lack sufficient

10   funds to maintain his continuing operations and the Debtor will be unable to comply with

11   the terms of the Asset Purchase Agreement.  *Id.* ¶ 16.

12        15.    Debtor recognizes that the Lender's interests in the Lender's Cash

13   Collateral are entitled to adequate protection.  *See* 11 USC § 363(e).  Among other

14   forms of adequate protection, the Bankruptcy Code lists the provision of additional or

15   replacement liens.  11 USC § 361(2).

16        16.    Exactly what constitutes adequate protection must be decided on a case-

17   by-case basis.  *See In re Energy Partners, Ltd.*, 409 BR 211, 236 (Bankr SD Tex 2009)

18   (*citing MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F2d 1393, 1396-97 (10th

19   Cir 1987)); *In re Martin*, 761 F2d 472, 476 (8th Cir 1985).  The focus of the requirement

20   is to protect a secured creditor from diminution in the value of its interest in collateral

21   during the reorganization process.  *Energy Partners*, 409 BR at 236.

22        17.    The Lender will be adequately protected by the retention of the value of

23   the Debtor's business as a going concern, the Debtor's proposed sale of its assets and

24   business as a going concern to Gimmal or to a higher bidder, and the replacement of

25   the Lender's Cash Collateral with replacement cash collateral generated or collected

26   post-petition as more fully set forth in the weekly cash flow projections through the week

Page 4 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL

1  of November 1, 2011 described in Exhibit 3 attached hereto.  As adequate protection for

2  the diminution in the value of the Lender's cash collateral, the Interim Order attached

3  hereto as Exhibit 1 grants the Lender a replacement lien in all of the Debtor's assets,

4  whether acquired prior to or after the Petition Date.  The replacement lien does not

5  include any of the Trustee's avoidance powers under 11 USC §§ 544-550 inclusive.

6      18.    The cash flow projections on Exhibit 3 demonstrate that with only one

7  weekly exception, the Debtor will generate revenues in excess of the expenditures it will

8  make.  The Debtor anticipates that it will only need to use the Lender's Cash Collateral

9  through the date of the closing of the sale to Gimmal or a higher bidder.

10      19.    The Debtor's use of the Lender's Cash Collateral will enable the Debtor to

11  pay the expenses of its business, and pay the administrative expenses of this

12  Chapter 11 case.[1]  Anderson Declaration, ¶ 17.  The entry of the Interim Order will

13  minimize disruption of Debtor's business operations, preserve the going concern value

14  of Debtor's business, allow the Debtor to comply with the ordinary course operations

15  provision of the Asset Purchase Agreement, and is in the best interest of Debtor's

16  estate.  Debtor cannot continue to operate his business, or preserve the value of his

17  assets, without the use of the Lender's Cash Collateral on the terms set forth in the

18  Interim Order.  The value of the Debtor's business and assets, if sold other than as a

19  going concern, is significantly less than the offer from Gimmal.   Debtor will face

20  immediate and irreparable harm if the relief requested is not granted.  *Id.* ¶ 18.

21      20.    It is in the best interests of Debtor, its creditors, and its estate for Debtor to

22  use the Lender's Cash Collateral because the use of the Lender's Cash Collateral will

23

24  [1] *See In re ProAlert, LLC,* 314 BR 436, 443 (BAP 9th Cir 2004) (Perris, J.) (holding that

25  adequately protected secured creditor's cash collateral may be used to pay professional fees in addition to amounts potentially due under 11 USC § 506(c)); *Wrecclesham*

26  *Grange*, 221 BR at 982 (holding that postpetition rents could be used not only to maintain the property, but also to run debtor's business).

Page 5 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL

1   allow the continued operation of Debtor's business as a going concern, and will allow

2   the Debtor to comply with the ordinary course operations provision of the Asset

3   Purchase Agreement, thereby maximizing the recovery to creditors.  Without use of the

4   Lender's Cash Collateral, Debtor's business operations will need to immediately cease.

5   *Id.* ¶ 19.

6       WHEREFORE, Debtor prays that this Court (a) enter the Interim Order attached

7   hereto as Exhibit 1; and (b) after final hearing held pursuant to Bankruptcy Rule

8   4001(b)(2), enter a final order authorizing Debtor to use the Lender's Cash Collateral

9   during the pendency of this case.

10       DATED this 17th day of August, 2011.

11

12            SUSSMAN SHANK LLP

13              */s/ Howard M. Levine*

14           By _____
             Howard M. Levine, OSB No. 800730
             Timothy A. Solomon, OSB No. 072573

15              Attorneys for Debtor and Debtor-in-Possession

16

17   F:\CLIENTS\21470\001\PLEADINGS\P-MOTION FOR CASH COLLATERAL (FINAL).DOC

18

19

20

21

22

23

24

25

26

Page 6 of 6 -MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

ERP-Link Corp.

      Debtor.

Case No. 11-37108-rld11

INTERIM ORDER AUTHORIZING USE
OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

      This matter having come before the Court on _____ __, 2011 upon the Debtor's Motion For Entry Of Interim And Final Orders Authorizing Use Of Cash Collateral  (the "Motion")  for interim authority to use cash collateral (the "Cash Collateral"), due and adequate notice under the circumstances having been given, and the Court having heard the representations and argument of counsel, and being fully advised of the premises thereof,

      **NOW THEREFORE, THE COURT FINDS AS FOLLOWS:**

      Commencement of Case.  On August 17, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court, commencing a case (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued to manage and operate its properties

Page 1 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 1 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   and business as a debtor in possession pursuant to sections 1107 and 1108 of the

2   Bankruptcy Code.

3      A.  No Creditors' Committee.  To date, the United States Trustee has not

4   appointed a committee pursuant to section 1102(a) of the Bankruptcy Code in this

5   Chapter 11 Case.

6      B.  <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these

7   proceedings and the parties and properties affected hereby pursuant to 28 U.S.C.

8   §§ 157(b) and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9   Venue for proceedings on the Motion is proper in this Court pursuant to 28 U.S.C.

10  

11  § 1409.

12     C.  <u>Prepetition Indebtedness to the  and Security Therefor</u>.  Walter Weyler, Jr.

13  ("<u>Lender</u>") and the Debtor are parties to that certain Secured Promissory Note dated

14  September 8, 2008 (the "<u>Note</u>") pursuant to which Lender made certain loans.  The

15  Note describes the collateral securing the obligations under the Note, which includes

16  the Debtor's accounts, inventory, general intangibles, and the proceeds of the foregoing

17  (collectively, the "<u>Prepetition Collateral</u>").  Lender contends that the Prepetition

18  Collateral secures all obligations of Debtor to Lender, totaling $280,090.  Debtor

19  contends Lender's lien is only secured to the extent of $176,712 of the debt, and is

20  unsecured for the balance of $103,378.  The portion of the Prepetition Collateral in the

21  form of cash and cash equivalents, and all cash proceeds of the Prepetition Collateral

22  received after the commencement of this Chapter 11 Case, shall all constitute Cash

23  

24  Collateral as defined above.

25  

26     D.  <u>Necessity of Financing and Use of Cash Collateral</u>.  The Debtor's sole

Page 2 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 2 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  source of revenue is cash, including Cash Collateral, and it is necessary for the Debtor

2  to pay operating expenses pending the Court's approval and entry of a final order

3  and/or any subsequent interim cash collateral orders and budgets during this

4  
5  Chapter 11 Case.  Use of Cash Collateral to pay expenses as set forth in the budget

6  attached hereto as <u>Exhibit A</u> (the "<u>Budget</u>") pending a final hearing is necessary to avoid

7  immediate and irreparable harm to the estate.

8      E.    <u>Cause</u>.  Entry of this Order will minimize disruption of the Debtor's

9  business, preserve the value of the Debtor's assets as a going concern, and is in the

10  best interests of the Debtor, its creditors, and its estate.

11  
12      F.    <u>Notice</u>.  Notice of the hearing and the relief requested in the Motion has

13  been given to (a) the Office of the United States Trustee, (b) the Lender, (c) the

14  creditors holding the 20 largest unsecured claims against the Debtor, and (d) all parties

15  requesting special notice pursuant to Bankruptcy Rule 2002.  Sufficient and adequate

16  notice of the hearing and the relief requested in the Motion has been given pursuant to

17  all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, including,

18  without limitation, section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002

19  and 4001.

20  
21      **NOW THEREFORE**, it is hereby ORDERED as follows:

22      1.    The Debtor is authorized to use Cash Collateral until the Termination Date

23  (as defined below), solely in accordance with the terms of this Order to pay costs and

24  expenses incurred by the Debtor in the ordinary course of its business, consistent with

25  the Budget.

26      2.    The Debtor's authority to use Cash Collateral is limited to the amounts set

Page 3 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 3 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1  forth in the Budget; provided, however, that the Debtor may make expenditures in

2  excess of said sums in the Budget so long as any variance shall not exceed 10% of the

3  cumulative expenses as set forth in the Budget, tested on a bi-weekly and monthly

4
5  basis.  The Debtor may exceed such variances only with the prior written consent of the

6  Lender or by subsequently entered order of this Court.

7      3.    The Debtor shall not borrow money from any person or entity on a

8  secured basis without first obtaining authority from the Court and consent from the

9  Lender.

10     4.    The Debtor's authority to use Cash Collateral, without further order of the

11  Court issued after notice and hearing or the written consent of the Lender, shall

12  automatically expire upon the earlier of (a) September __, 2011, or (b) regardless of

13
14  whether the Debtor has expended the entire amount set forth in the Budget, the failure

15  by the Debtor to comply with any provision of this Order (such failure being an "Event of

16  Default"), which failure is not remedied within five business days after delivery of notice

17  of such failure by the Lender to the Debtor (the earlier of such dates, the "Termination

18  Date").  Upon the Termination Date, the Debtor's authority to use or spend any further

19
20  Cash Collateral shall automatically terminate unless and until the Debtor obtains the

21  written consent of the Lender or a further order of this Court authorizing such use,

22  issued after notice and an opportunity for a hearing; provided, however, that

23  notwithstanding the occurrence of the Termination Date, the Debtor shall be authorized

24  to use Cash Collateral to pay those budgeted amounts that have been incurred prior to

25  the Termination Date.

26     5.    As adequate protection for any Cash Collateral used by the Debtor,
Page 4 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 4 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1   Lender is hereby granted, pursuant to sections 361(1) and 363(e) of the Bankruptcy

2   Code, a perfected lien (the "Replacement Lien") to secure an amount of Lender's

3   prepetition claims, up to the allowed amount of Lender's prepetition secured claim,

4
    equal to the extent of any diminution in value of the Prepetition Collateral (the
5
6   "Diminution") by reason of the use of Cash Collateral authorized herein.   The

7   Replacement Lien shall not improve Lender's position or increase the amount of

8   Lender's allowed prepetition secured claim.  The Replacement Lien shall attach to all

9   property and assets of the Debtor and its estate, of the same kind or nature as the

10  Prepetition Collateral, whether now owned or hereinafter acquired by the Debtor, and all

11
    products, proceeds, rents, issues or profits thereof; provided, however, the
12
13  Replacement Lien shall not attach to property recoverable or recovered through the

14  exercise of the powers granted under sections 506(c), 544, 545, 547, 548 and 549 of

15  the Bankruptcy Code.  Granting this security interest to Lender is for the sole purpose of

16  providing adequate protection to Lender to  protect its allowed secured claim on the

17  Petition Date and is not intended, nor shall it be deemed, to improve the collateral

18  position of  as of the Petition Date.

19
        6.      The Replacement Lien shall be in addition to all other security interests
20
21  and liens securing Lender's allowed secured claim in existence on the Petition Date.

22  Additionally, nothing in this Order shall abridge or limit Lender's security interest in

23  proceeds, products, or profits to the extent provided under section 552 of the

24  Bankruptcy Code.

25      7.      The Replacement Lien hereunder shall at all times be senior to the rights

26  of the Debtor and any successor trustee or estate representative in this case or any

Page 5 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 5 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    subsequent cases or proceedings under the Bankruptcy Code.

2          8.    The Replacement Lien granted to Lender by this Order shall be perfected

3    and enforceable by operation of law upon execution and entry of this Order by the Court

4
5    without regard to whether such security interests and liens are perfected under

6    applicable non-Bankruptcy law.

7          9.    To the extent the Replacement Lien proves to be inadequate as adequate

8    protection for the Diminution, as further partial adequate protection, Lender shall and

9    hereby does hold an administrative claim under section 503(b) of the Bankruptcy Code.

10         10.    In the event of the occurrence of an Event of Default, and at all times

11   thereafter, Lender may seek relief from the Court on five business days written notice to

12
13   the Debtor to, among other things, (a) terminate forthwith Lender's agreement to allow

14   the Debtor to use all or any portion of the Cash Collateral and (b) terminate the

15   automatic stay imposed by section 362(a) of the Bankruptcy Code for the purpose of

16   exercising 's rights under the Loan Agreement.

17         11.    This Order, and each of its terms, shall be effective immediately upon

18   entry by the Court and the automatic stay of judgment provisions of Bankruptcy Rule

19
20   8017(a) shall not apply.

21         12.    A final hearing on the Debtor's Motion for Authority to Use Cash Collateral

22   shall be held by the Court in Courtroom _____ of the United States Bankruptcy Court for

23   the District of Oregon, 1001 SW Fifth Avenue, 7th Floor, Portland, Oregon 97204, on

24   September __, 2011 at __:__ _.m. or as soon thereafter as counsel may be heard.

25   Within three (3) business days after the entry hereof, the Debtor shall mail or otherwise

26   serve a copy of this Order, together with a notice of the final hearing, pursuant to LBR

Page 6 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 6 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

1    4001-1.D and LBF 541.50.

2                                         # # #

3

4    PRESENTED BY:

5    SUSSMAN SHANK LLP

6

7

8    By:_____
          Howard M. Levine, OSB No. 800730
9          Attorneys for Debtor
          hlevine@sussmanshank.com

10

11   cc:    ECF Participants
          List of Interested Parties
12

13

14

15   F:\CLIENTS\21470\001\PLEADINGS\P-ORDER (CASH COLLATERAL-INTERIM)(FINAL).DOC

16

17

18

19

20

21

22

23

24

25

26

Page 7 of 7 - INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION

Exhibit 1
Page 7 of 7

SUSSMAN SHANK LLP, ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400, PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111 | FACSIMILE (503) 248-0130

Secured Promissory Note between ERP-Link and Walt Weyler

## SECURED PROMISSORY NOTE

$ .00,000                                                               September 8, 2008
                                                                       Portland, Oregon

FOR VALUE RECEIVED, **ERP-Link**, an Oregon Company, of 310 SW 4th Ave, Portland Oregon 97204 (the "Seller") ("**Maker**"), promises to pay to the order of Walter Weyler, Jr., an individual residing at 2135 SW Altadina Court, Portland, OR 97219 ("**Lender**"), the aggregate unpaid principal amount of all loans (each a "**Loan**" and collectively, the "**Loans**") shown on the attached **Schedule A** to this Secured Promissory Note (this "**Note**"), which amount shall not exceed One Hundred Thousand Dollars ($100,000), in lawful money of the United States, with accrued interest thereon, payable in the manner and on the terms hereinafter set forth.

1.    Loans.   From the date September 8, 2008 until December 1, 2008 (the "**End Date**"), Lender will make Loans to Maker in an aggregate principal amount not to exceed $100,000.  Each Loan shall be requested in writing (delivered by post, facsimile or email in portable document format), by a person authorized to act on behalf of Maker, at least one (1) business day prior to disbursement, and include the requested amount, disbursement date, and signature of Maker.  Each Loan shall be subject to the terms and conditions of this Note.  Lender shall at no time have any obligation to lend more under this Note than is then outstanding and each and every Loan shall be within the sole discretion of Lender.  Each Loan, and all payments made on account of the principal of each Loan, shall be recorded by Lender in its records and endorsed on the grid attached hereto as **Schedule A**; provided, that the failure to so record any such amount or any error in so recording such amount shall not limit or otherwise affect the obligations of Maker to repay the principal amount of the Loans together with all interest accruing thereon.  Subject to the terms hereof, amounts borrowed under this Note can be repaid and re-borrowed from time to time, up to the End Date.

2.    Interest.  Interest shall accrue on the unpaid principal balance outstanding under this Note, and on any interest not paid when due, at the rate of twenty-five percent (30%) per annum, compounded daily and computed on the basis of a 360-day year and actual days elapsed, from the date of this Note and continuing until all sums due hereunder are paid in full.  Upon funding, Maker shall pay Lender additional interest in the amount equal to fourteen points or (14%) to cover legal, accounting and management costs.  It is the intent of the parties that the rate of interest and the other charges to Maker under this Note shall be lawful; therefore, if for any reason the interest or other charges payable under this Note are found by a court of competent jurisdiction, in a final determination, to exceed the limit that Lender lawfully may charge Maker, then the obligation to pay interest and other charges shall be reduced automatically to such limit and, if any amount in excess of such limit shall have been paid, then such excess amount shall be refunded to Maker.

3.    Maturity.  Maker shall repay the entire unpaid principal balance of this Note, together with all accrued but unpaid interest thereon, on or before the End Date; provided, however, that, at any time, upon written demand by Lender, the "Maturity Date", the entire unpaid principal balance hereof and all accrued but unpaid interest thereon, shall become immediately due and payable within 60 days of such written demand.  All payments under this Note shall be made to Lender at its address above or at such other address as Lender may

Exhibit  2
Page  1  of  10

designate in writing to Maker, and shall be applied first to pay accrued interest and second to repay principal.

4.    Prepayment.  Maker may prepay all or any portion of the balance outstanding under this Note at any time without penalty.  Any such prepayment shall be applied first to pay interest accrued to the date of prepayment and second to reduce the principal balance.

5.    Grant of Security Interest.  Maker grants and pledges to Lender a continuing security interest in the collateral set forth on **Exhibit A** hereto (the "**Collateral**") in order to secure the timely repayment of the obligations evidenced hereby and any and all other obligations of Maker to Lender in connection with this Note.  Such security interest constitutes a valid security interest in the Collateral.  Maker agrees to execute such financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral.  Maker authorizes Lender to file one or more financing statements describing the Collateral in any and all jurisdictions where, and with any and all governmental authorities with whom, the Lender deems such filing to be necessary or appropriate including, without limitation, the Secretary of State for the State of Oregon.  Upon an Event of Default (as defined below), Lender shall have all the rights of a secured party under the Oregon Uniform Commercial Code.  In addition, Lender may exercise his rights to collect the accounts receivable included in the Collateral and to notify account debtors to make payments directly to Lender for application to outstanding obligations evidenced hereby and Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose or realize on the Collateral as Lender may determine.  Lender shall have, and may exercise, any and all other rights and remedies he may have available at law, in equity or otherwise.

6.    Representations and Warranties.  Maker hereby represents and warrants to Lender that:

(i)    Maker has good and marketable title to the all Collateral, free and clear of any liens or encumbrances, and such Collateral;

(ii)   All inventory is salable in the normal course of business subject to a reserve for obsolescence;

(iii)  Maker is duly organized and validly existing as a corporation under the laws of the state of Oregon, and is in good standing as a corporation and qualified to do business in each state in which the nature of its business or property so requires;

(iv)   Maker has the corporate power and authority and is duly authorized to execute and deliver this Note;

(v)    Maker's execution and delivery of this Note do not violate its Articles of Incorporation or Bylaws and do not constitute a breach of any agreement to which Maker is bound;

(vi)   There are no actions or proceedings pending or, to the knowledge of Maker, threatened against Maker that would reasonably be expected to (a)

Exhibit 2
Page 2 of 10

Secured Promissory Note between ERP-Link and Walt Weyler

result in any material adverse change in Maker's financial or business condition or (b) adversely affect any of Maker's assets, including the Collateral; and

(vii)  The accounts receivable included in the Collateral represent bona fide transactions made in the ordinary course of Maker's business; such accounts receivable are current and collectible, net of the respective reserves shown on Maker's balance sheet (which reserves are adequate and calculated consistent with past practice); each such account receivable will be collected in full, without any setoff, within sixty (60) days after the day on which it first becomes due and payable; and there is no contest, claim, defense or right of setoff under any contract with any account debtor of such accounts receivable relating to the amount or validity of such accounts receivable.

7.    Covenants. Maker shall not at any time, without Lender's prior written consent, which shall not be unreasonably withheld:

(i)    sell, lease or otherwise dispose of or transfer any material portion of the Collateral, other than in the ordinary course of its business;

(ii)   grant security interests in the Collateral, other than those existing on the date hereof and disclosed to Lender pursuant to paragraph 7(i) above or those granted pursuant to this Note;

(iii)  declare or pay any dividend to its shareholders;

(iv)  Permit the aggregate principal balance of Loans under this Note to exceed 70% of the balance of Maker's Liquid Accounts Receivable and Liquid Inventory.  "Liquid Accounts Receivable" shall be determined as that which is less than sixty (60) days beyond the agreed upon customer terms based on an Accounts Receivable aging schedule that is dated no more than seven (7) days prior to the date of measurement to occur at least weekly.  Inventory is valued at the incremental landed cost of goods including manufacturing and shipping costs but excluding warehousing and overhead.  "Liquid Inventory" is that which can be sold in the next one hundred (100) days based on the sales rate for the last three months or the entire sales history (whichever is smaller)

8.    Default.  The occurrence of any one of the following events shall constitute a default by Maker (an "**Event of Default**") under this Note:

(i)    Maker's failure to pay any amount due hereunder within ten (10) days after the date that such amount is due and payable;

(ii)   Any warranty or representation of Maker to Lender herein proves to have been false or misleading in any material respect when made;

Exhibit _2___
Page _3_ of _10_

Secured Promissory Note between ERP-Link and Walt Weyler

(iii)  Maker's failure to comply with any covenant or other obligation under this Note; or

(iv)  A proceeding under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed against Maker, which is not dismissed within sixty (60) days of its filing, or a proceeding under any bankruptcy, reorganization, arrangement of debt, insolvency, readjustment of debt or receivership law or statute is filed by Maker or Maker makes an assignment for the benefit of creditors.

9.   Acceleration.  Upon the occurrence of an Event of Default hereunder, (i) without demand, notice or legal process of any kind, all outstanding principal and accrued and unpaid interest hereunder by Maker shall immediately become due and payable in full, and (ii) Maker shall pay all costs of enforcement and collection, including, without limitation, reasonable attorneys' fees and costs incurred by Lender, whether or not enforcement and collection includes the filing of a lawsuit, and whether or not that lawsuit is prosecuted to judgment. The costs of enforcement and collection shall be added to the principal amount of the Note and shall accrue interest from the date incurred by Lender to the date paid by Maker, at the interest rate specified in paragraph 2 hereof.

10.   Waiver.  Maker, except as otherwise specifically set forth herein, for itself and for its successors, transferees and assigns, hereby irrevocably waives diligence, presentment and demand for payment, protest, notice, notice of protest and nonpayment, dishonor and notice of dishonor and all other demands or notices of any and every kind whatsoever. Maker hereby agrees that this Note and any or all payments coming due hereunder may be extended from time to time in the sole discretion of Lender hereof without in any way affecting or diminishing Maker's liabilities hereunder.

11.   Attorney Fees.  Maker agrees to pay, upon Lender's demand therefore, any and all costs, fees and expenses (including reasonable attorneys' fees, costs and expenses) incurred by Lender in enforcing any of Lender's rights hereunder, including without limitation those incurred at trial and on appeal.

12.   Severability.  In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event any one or more of the provisions of this Note operates or would prospectively operate to invalidate this Note, then, and in either of such events, such provision or provisions only shall be deemed null and void and shall not affect any other provision of this Note, and the remaining provisions of this Note shall remain operative and in full force and effect.

13.   Notices.  Any notice, demand or request required or permitted to be given under this Note must be in writing and will be deemed given at the time it is (i) personally delivered to recipient; (ii) deposited in the mail or delivered to a common carrier or courier with regularly scheduled deliveries with first-class postage or delivery charges prepaid, in either case addressed to a party at the address shown above for such party, or at such other address as any party may designate by ten (10) days' advance written notice to the other party; or (iii) actually transmitted to recipient using electronic means.

Exhibit 2
Page 4 of 10

Secured Promissory Note between ERP-Link and Walt Weyler

14.    Transfer Restriction.  This Note may be pledged, transferred, assigned or sold by Lender, subject to relevant federal and state securities laws.

15.    Governing Law.  This instrument shall be governed by and construed in accordance with the laws of the State of Oregon, without giving effect to the conflict of law principles thereof.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date set forth above.

ERP-Link Corp.

By: Eric Anderson
Title:  President

Schedule of payments and repayments

SCHEDULE A TO
D PROMISSORY NOTE

PAYMENTS OF PRINCIPAL

AMOUNT OF
PRINCIPAL REPAID

UNPAID Principal
BALANCE

Exhibit ____2____
Page __6__ of __10__

Secured Promissory Note between LRP-Link and Walt Weyler

### EXHIBIT A TO
### SECURED PROMISSORY NOTE

#### DESCRIPTION OF COLLATERAL

As used in the Note, the term "Collateral" shall mean:

(i)     all of the property and assets of Maker, tangible and intangible, real and personal, including, but not limited to, all

    (a)    cash;

    (b)    accounts, accounts receivable, contract rights, general intangibles, chattel paper, notes, drafts, acceptances, and all other debts, obligations and liabilities in whatever form owing to Maker from any person, firm, corporation or other legal entity;

    (c)    inventory;

    (d)    machinery and equipment;

    (e)    software, source code and related documentation;

    (f)    patents, copyrights, trademarks, trade secrets, and other intellectual property used, registered or applied for, including all Maker's registered and filed patents including but not limited to design and utility patents.

    (g)    real property and leases, wherever located, including any fixtures related thereto

in each case whether now existing or hereafter arising or acquired;

(ii)    all replacements of the property and assets referenced in clause (i), the ownership of which is acquired by Maker after the date of the Note; and

(iii)    all the proceeds or products of the foregoing.

Exhibit 2
Page 7 of 10

Secured Promissory Note between ERP-Link and Walt Weyler

## EXHIBIT B TO
## SECURED PROMISSORY NOTE

### LIST OF MAKER'S INDEBTEDNESS FOR
### BORROWED MONEY

1.  Indebtedness pursuant to this Amended and Restated Secured Promissory Note.

2.  Unsecured Indebtedness in the principal amount of $13,770.0 pursuant to that certain Promissory Note dated 12/27/07, by and between Maker and Ed Brown Series C Shareholder. The maturity date of the Promissory Note, is 6/30/09 with interest at a rate of 17% and 3 payments beginning 6/30/08 and every 6 months thereafter concluding on the maturity date.

3.  Unsecured Indebtedness in the principal amount of $27,540.0 pursuant to that certain Promissory Note dated 12/27/07, by and between Maker and Farrell Petersen, ERP-Link Series C Shareholder. The maturity date of the Promissory Note, is 6/30/09 with interest at a rate of 17% and 3 payments beginning 6/30/08 and every 6 months thereafter concluding on the maturity date.

4.  Unsecured Indebtedness in the principal amount of $145,000 plus accrued interest, pursuant to that certain Verbal Promissory Note dated March 2008   by and between Maker and Lynn Miller, a ERP-Link Shareholder. The maturity date of the Promissory Note, is September 2009 with interest at a rate of 10% and principle payments as the company can afford, but concluding on the maturity date. (email documentation attached)

5.  Unsecured Indebtedness in the principal amount of $25,000 pursuant to one convertible warrants promissory note by and between Maker and Doug and Mary Sater, a ERP-Link Series C shareholder, with interest at a rate of 17% and with a final maturity date of 09/2008.

6.  Personal Indebtedness in the approximate amount of $128,000  pursuant to personally guaranteed credit card debt used for the companies purposes and  owed to various Credit Card Companies.

State of Oregon
Initial Filing 2 Page(s)

9033133609

8077980
09/10/08 11:04 AM
OR Sec. of State

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)



P.O. Box 12054, Salem, OR  97309-0054
Ref: 1092

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME -- insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | ERP-Link Corp. | | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 310 SW 4th Avenue, Suite 400 | Portland | OR | 97204 | U.S.A. |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | corporation | Oregon | OR#619799-86  ☐NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| | 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐NONE |

3. SECURED PARTY'S NAME (or Name of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| | 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|---|
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| | Weyler | Walter | | | Jr. |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2135 SW Altadina Court | Portland | OR | 97219 | U.S.A. |

4. This FINANCING STATEMENT covers the following collateral:

See attached Exhibit A for a description of the collateral.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☐ | This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum  [if applicable] | 7. See Instruction Debtor(s) |
|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
File with Oregon Secretary of State; 29424/3

401 FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 9/05)

Exhibit  2
Page  9  of  10

## Exhibit A to UCC Financing Statement

**Debtor:**           **ERP-Link Corp.**

**Secured Party:**    **Walter Weyler, Jr.**


The collateral covered by this financing statement is the following:

(i)     all of the property and assets of Debtor, tangible and intangible, real and personal, including, but not limited to, all

    (a)     cash;

    (b)     accounts, accounts receivable, contract rights, general intangibles, chattel paper, notes, drafts, acceptances, and all other debts, obligations and liabilities in whatever form owing to Debtor from any person, firm, corporation or other legal entity;

    (c)     inventory;

    (d)     machinery and equipment;

    (e)     software, source code and related documentation;

    (f)     patents, copyrights, trademarks, trade secrets, and other intellectual property used, registered or applied for, including all of Debtor's registered and filed patents, including but not limited to design and utility patents; and

    (g)     real property and leases, wherever located, including any fixtures related thereto

    in each case whether now existing or hereafter arising or acquired;

(ii)    all replacements of the property and assets referenced in clause (i), the ownership of which is acquired by Debtor after September 8, 2008; and

(iii)   all the proceeds or products of the foregoing.

PortInd2-4700077.1 0029424-00003

Exhibit _2_
Page _10_ of _10_

**ERP-Link Cash Flow Projection**
**August 15 thru Nov 1, 2011**

| | | *up to* | *Sep 1 thru* | *Sep 15 thru* | *October 1 thru* | *Oct 15 thru* | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | **1-Sep** | **15-Sep** | **1-Oct** | **15-Oct** | **1-Nov** | |
| **Cash-In** | | | | | | | |
| | PharmaScience or Toro | | | | **26000** | | Pending |
| | Seion or Frequentis | | | | | **26,000** | Pending |
| | Cornell or EADS | | | | **33000** | | Pending |
| | ceradyne | | **3200** | **2100** | **8000** | | |
| | Sauer Danfoss renew | | **10500** | | | | |
| | Miami Dade Renew | | **10500** | | | | |
| | Janus Funds | | **11400** | **4800** | | | |
| | OPG | **9400** | | | | | |
| | Aptar | | **10500** | **850** | | | |
| | Monsanto | | | **18126** | **1600** | | |
| | Borg Warner | **28600** | | | | | |
| | Tysons | | | **1400** | | | |
| | siemens | | | | **3500** | **39,000** | Pending |
| | Neudesic | | **2000** | | | | |
| | **total in** | | **38,000** | **48,100** | **27,276** | **72,100** | **65,000** | Total pending new |
| | Beginning Cash Balance | **21230** | | | | | | **124,000** orders |
| | **cash out** | | **25175** | **44725** | **31425** | **31725** | **29725** | |
| | **Balance left** | **21,230** | **34,055** | **37,430** | **33,281** | **73,656** | **108,931** | |

**Cash Out - detail**

| | | **1-Sep** | **15-Sep** | **1-Oct** | **15-Oct** | **1-Nov** |
| --- | --- | --- | --- | --- | --- | --- |
| | Tech CFO | 900 | | 900 | | 900 |
| | Sterling Communications | 1250 | | 1250 | | 1250 |
| | Regence Health Plan | | 2400 | | 2400 | |
| | Gustavo Velez 1099 | 4125 | 4125 | 4125 | 4125 | 4125 |
| | Chris Kruell 1099 | 1250 | 1250 | 1250 | 1250 | 1250 |
| | Payroll | 14800 | 14800 | 14800 | 14800 | 14800 |
| | 5th & Washington Rent | 750 | | 750 | | 750 |
| | Verizon | 350 | | 300 | | 300 |
| | misc | 250 | 250 | 250 | 250 | 250 |
| | business development | 1500 | 1500 | 1500 | 1500 | 1500 |
| | norikkon | 0 | 7500 | 6300 | 7400 | 4600 |
| | SAP | | 12900 | | | |

Exhibit 3
Page 1 of 1

Ater Wynne LLP
1331 NW Lovejoy St.,
Suite 900
Portland, OR  97209-3280

Battle Mountain Properties
662 N 2600 W
Mesquite, NV 89027

Chase Cardmember Service
P O Box 94014
Palatine, IL 60094-4014

Christopher Kruell
P O Box 10061
Portland, OR  97296

Citi
P O Box 6500
Sioux Falls, SD 57117-6500

Douglas D. Sater
826 Bandolier Lane
Washington, UT  84780

Farell Petersen
1112 Goldenrod Circle
St. George, UT  84790

Geffen Mesher & Co. PC
888 SW Fifth Ave., Suite 800
Portland, OR  97204

Gimmal Group
2400 Greenway Plaza, Suite 800
Houston, TX  77046

Hiram A Smith
662 N. 2600 W
Mesquite, NV 89027

James & Denise Dillion
1961 Twin Sun Circle
Walled Lake, MI  48390

JMSI, Inc.
269 S. Beverly Drive
PMB# 683
Beverly Hills, CA  90212

John Kallen Consult, AB
Fleminggtan 55
112 32 Stockhoml
Sweden

Josef Leicht
7400 SW Barnes Road
Portland, OR  97225

Lynn A. Miller
677 Sky Mountain Blvd
Hurricane, UT 84737

Norikkon
1218 Oxford Place
Cary, NC 27511

Ron Johnson
3389 S. 700 W.
Salt Lake City, UT 84119-4115

Steven Schroeder
3389 S. 700 W.
Salt Lake City, UT 84119-4115

Todd Mackey
226 Hill Ct.
Castle Rock, CO 80104

Walter Weyler, Jr.
2135 SW Altadina Ct.
Portland, OR  97219

Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-7346

The Attorney General of USA
Department of Justice
10th & Constitution NW
Washington, DC 20530

Internal Revenue Service MS240
100 SW Main St., Suite 1200
Portland, OR  97204-2871

Oregon Dept. of Revenue
ODR Bankruptcy
955 Center St.
Salem, OR  97301

Oregon Attorney General
Department of Justice
1162 Court St. NE
Salem, OR  97301

State of California
Franchise Tax Board
P O Box 942857
Sacramento, CA  94257

Consumer Law, Attn: Bankruptcy
CA Atty General Office
455 Golden Gate Ave, Ste 11000
San Francisco, CA  94102

State of Colorado
Department Of Revenue
1375 Sherman St.
Denver, CO 80261

Office of the Attorney General
Colorado
1525 Sherman St., 7th Flr.
Denver, CO 80203

State of Florida
5050 West Tennessee St.
Tallahassee, FL 32399

Office of the Attorney General
State of Florida
The Capital L-01
Tallahassee, FL 32399-1050

State of New Jersey
P O Box 929
Trenton, NJ 08646-0929

Office of the Attorney General
State of New Jersey
P O Box 080
Trenton, NJ 08625-0080

State of New York
P O Box 1909
Albany, NY 12201-1909

Office of the Attorney General
The Capital
Albany, NY 12224-0341

State of South Carolina
301 Gervais St.
P O Box 125
Columbia, SC 29214

The Honorable Alan Wilson
Attorney Generals Office
P O Box 11549
Columbia, SC 29211

Pacific Power
Attn. Its Representative
CT Corporation System
388 State St. Suite 420
Salem, OR  97301

Sterling Communications, Inc.
Attn. Its Representative
Tom Gillihan
14945 SW Sequoia Pkwy, #110
Portland, OR  97224

Verizon Wireless Services, LLC
Attn. Its Representative
CT Corporation System
388 State St. Suite 420
Salem, OR  97301

Mark Finkelstein
Shannon, Martin, Finkelstein &
Alvarado, P.C.
1001 McKinney Street, Suite 1100
Houston, TX 77002-6424

ERP-Link Corp.
510 SW Fifth Ave.
Suite 200
Portland, OR  97204

SEC
Attn:  Bankruptcy Counsel
5670 Wilshire Blvd.,  11th Floor
Los Angeles, CA  90036